In the Matter of Disciplinary Proceedings Against
Lilah J. Zajac, Attorney at Law:

Office of Lawyer Regulation,
Complainant,

v.

Lilah J. Zajac,
Respondent.

Supreme Court

*No. 2007AP981–D. Decided May 16, 2008.*

2008 WI 42

(Also reported in 748 N.W.2d 774.)

¶ 1. PER CURIAM. We review the stipulation filed by the Office of Lawyer Regulation (OLR) and Attorney Lilah J. Zajac pursuant to SCR 22.12 wherein Attorney Zajac admits to the facts and professional misconduct as alleged by the OLR in its complaint. Attorney Zajac also assents to the level of discipline sought by the OLR director, a 60–day suspension of her license to practice law in Wisconsin.

¶ 2. We adopt the stipulated facts and conclusions of law. We agree that Attorney Zajac's misconduct warrants the suspension of her license to practice law in Wisconsin for a period of 60 days. The OLR has stated that it does not seek to impose the costs of this proceeding upon Attorney Zajac, and we accede to that recommendation.

¶ 3. Attorney Zajac was admitted to practice law in Wisconsin in 2001 and most recently practiced at Horizons Law Group, LLC, in Wauwatosa. She has no prior disciplinary history.

¶ 4. On April 27, 2007, the OLR filed an order to answer and a complaint alleging eight counts of professional misconduct. All arose out of Attorney Zajac's handling of two estate matters while she was an attorney at Legal Horizons.

¶ 5. C.V. died in 2002 survived by four daughters and a son, F.V. C.V.'s will left her Milwaukee home to F.V. F.V. filed an application for informal probate transferring his mother's house to his name. F.V. died shortly thereafter. His only heirs were his four sisters. After F.V. died, one of the sisters, R.G., moved into her mother's home. C.V.'s will had stated that the house should go to R.G. if F.V. predeceased her.

¶ 6. On July 29, 2002, R.G. met with an attorney at Legal Horizons about representing her with regard to her mother's and brother's estates so that she could have the house transferred to her own name. R.G. was quoted a $1,000 flat fee for the representation, to be paid in $250 installments. R.G. signed a retainer agreement in October 2002 and subsequently made various fee payments. Attorney Zajac told the OLR that all payments from R.G. were deposited into the main LLC account at Legal Horizons as flat fee payments.

¶ 7. On November 26, 2002, Attorney Zajac filed R.G.'s amended application for informal administration of C.V.'s estate and R.G. was appointed personal representative. The same day Attorney Zajac also filed an application for informal administration of F.V.'s estate.

¶ 8. In F.V.'s estate, Milwaukee County filed a claim for $591.54. In C.V.'s estate, Milwaukee County filed a claim for $7,987.37 to recover benefits C.V. had received between 1959 and 1975. Victor & Victor, Ltd. filed a $736.41 claim for C.V.'s J.C. Penney credit card. The J.C. Penney claim was filed after the deadline for claims established after the filing of the initial application for informal administration of the estate that F.V. had filed before his death, but less than four months after Attorney Zajac filed R.G.'s amended application for informal administration.

¶ 9. Although Attorney Zajac raised the issue of whether the late filing of the J.C. Penney claim would invalidate it, there was no evidence she researched the issue further, nor did she take any action to challenge the claim in C.V.'s estate. Instead of attempting to dispute the validity of the J.C. Penney debt, Attorney Zajac tried to negotiate a settlement. Attorney Zajac also sent a letter to Milwaukee County saying that C.V.'s family wanted to either dispute its claim as stale or

settle it, and she negotiated with the county to have the house pass to F.V.'s estate subject to the county's lien. In April 2003 the county provided a draft lien to be executed and filed by R.G., as personal representative of C.V.'s estate.

¶ 10. In December 2003 the circuit court issued an order to show cause why C.V.'s estate had not been closed. In January 2004 R.G. and Attorney Zajac attended a hearing on the order to show cause, and the hearing was adjourned until March 9, 2004.

¶ 11. On March 8, 2004, Attorney Zajac met with R.G. at R.G.'s home. R.G. executed the lien documents to allow the house to pass from C.V.'s estate to F.V.'s estate, subject to the county's lien. The lien documents were filed in probate court the next day. During the March 8, 2004, meeting, R.G. gave Attorney Zajac $344 in cash, representing the final installment of the flat fee owed to Legal Horizons.

¶ 12. Attorney Zajac told the OLR that when R.G. accompanied her to an order to show cause hearing in probate court on March 9, 2004, Attorney Zajac asked R.G. if Attorney Zajac could apply the $344 payment toward the J.C. Penney bill. Attorney Zajac also said she offered to personally cover the rest of the bill, without a realistic expectation of repayment. Attorney Zajac also told the OLR she had mailed the J.C. Penney payment to Victor & Victor on March 8, 2004, using her personal funds. Attorney Zajac did not provide the OLR with any written documentation to support her claim that she had loaned money to R.G. or the estate by paying the J.C. Penney bill from her personal funds.

¶ 13. By April 2004 Milwaukee County's deputy register in probate had frequently told Attorney Zajac to get C.V.'s estate closed. Attorney Zajac did not specifically discuss with R.G. any deadline to close the

estate. There is no evidence to support a finding that Attorney Zajac provided notice to R.G. that there was a court appearance scheduled for May 11, 2004. Neither R.G. nor Attorney Zajac appeared for the May 11, 2004, hearing. At the hearing, R.G. was removed as personal representative and Attorney Zajac was removed as counsel for C.V.'s estate. On May 17, 2004, the probate court issued domiciliary letters with general powers and duties of a personal representative of C.V.'s estate to Attorney Janet Resnick.

¶ 14. R.G. was surprised and upset when she received the order removing her as personal representative. She called Attorney Zajac, who told R.G. she would "fix it." Weeks later, Attorney Zajac still had not filed any documents with the court to have herself and R.G. reinstated. R.G. subsequently hired another attorney to assist her in objecting to Attorney Resnick's actions on behalf of the estates.

¶ 15. The OLR's investigation revealed that R.G.'s perception was that Attorney Zajac frequently did not discuss matters regarding the estates with R.G. in a way she could understand what was happening or what needed to be done.

¶ 16. The eight counts of misconduct set forth in the OLR's complaint were as follows:

> **Count One**: By failing to adequately pursue whether the late filing of the J.C. Penney claim filed by Victor and Victor, Ltd., could serve as a defense to its enforcement against C.V.'s estate; failing to properly calendar and attend the May 11, 2004, order to show cause hearing; and failing to request direction from the probate court or explain to the court difficulties she was having in closing C.V.'s estate; Attorney Zajac violated former SCR 20:1.3.[1]

---

[1] Effective July 1, 2007, substantial changes were made to

**Count Two:** By failing to sufficiently and adequately communicate to R.G.: the necessity to close C.V.'s estate within a certain time and the consequences for not doing so; whether a title report should be obtained regarding C.V.'s house and the consequences for not doing so; and whether the date of the filing of the J.C. Penney claim filed by Victor and Victor, Ltd., could serve as a defense to its enforcement against C.V.'s estate, so as, in each such instance, to allow R.G. and her family to make informed decisions regarding these matters; Attorney Zajac violated SCR 20:1.4(a).[2]

**Count Three:** By paying from her personal funds a claim filed against C.V.'s estate by Victor and Victor, Ltd., Attorney Zajac loaned funds to R.G. or C.V.'s estate, when (1) the transaction and terms on which Attorney Zajac acted were not fully disclosed and transmitted in writing to the client in a manner which could be reasonably understood by the client; (2) the client was not given a reasonable opportunity to seek the advice of independent counsel in the transaction; and (3) the client did not consent in writing thereto; and therefore Attorney Zajac violated SCR 20:1.8(a).[3]

---

the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys, SCR Chapter 20. *See* S. Ct. Order 04–07, 2007 WI 4, 293 Wis. 2d xv, 726 N.W.2d Ct.R-45 (eff. July 1, 2007); and S. Ct. Order 06–04, 2007 WI 48, 297 Wis. 2d xv, 730 N.W.2d Ct.R.-29 (eff. July 1, 2007). Because the conduct underlying this case arose prior to July 1, 2007, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2007.

Former SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[2] Former SCR 20:1.4(a) states that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[3] Former SCR 20:1.8(a) provides:

**Count Four:** By providing financial assistance to R.G. or C.V.'s estate in the form of paying from her personal funds a claim filed against the estate by Victor and Victor, Ltd., Attorney Zajac violated SCR 20:1.8(e).[4]

**Count Five:** By failing to promptly advise R.G. that she had decided not to file a motion seeking to reinstate R.G. as personal representative of C.V.'s estate after having previously advised R.G. that she would file such a motion, when Attorney Zajac was aware that R.G. was relying on Attorney Zajac to file such a motion immediately after her agreement to do so, Attorney Zajac violated SCR 20:1.16(d).[5]

A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing thereto.

[4] Former SCR 20:1.8(e) states:

A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:

(1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and

(2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

[5] Former SCR 20:1.16(d) states:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of

**Count Six:** By converting R.G.'s $344 payment and also by representing to R.G., her sister, Attorney Resnick, and the probate court that the J.C. Penney claim filed against C.V.'s estate by Victor and Victor, Ltd., had been paid in February or March 2004, Attorney Zajac violated SCR 20:8.4(c).[6]

**Count Seven:** By advising OLR (1) that she had mailed check #897 and the accompanying letter dated February 28, 2004, to Victor and Victor, Ltd.; (2) that on or about April 14, 2004, she had advised R.G. of the May 11, 2004, hearing scheduled in the probate of C.V.'s estate; and (3) by providing OLR with a photocopy of a handwritten note purporting to have been created on or about April 14, 2004, when the note was created after the issuance of the court's May 13, 2004, order, Attorney Zajac violated SCR 22.03(6),[7] actionable via SCR 20:8.4(f).[8]

**Count Eight:** By failing to timely provide OLR with a written response containing all of the records and information requested in OLR's letters dated May 5, June 6, and June 28, 2005; by failing to timely provide

---

fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[6] Former SCR 20:8.4(c) states that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[7] SCR 22.03(6) states, "In the course of the investigation, the [attorney's] wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the [attorney's] misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[8] Former SCR 20.8.4(f) provides it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers; . . . ."

26

OLR with a written response containing all of the records and information requested in OLR's letters dated June 13 and July 18, 2006; and by failing to provide any of the information and records requested in OLR's letter dated November 16, 2006; Attorney Zajac violated SCR 22.03(2)[9] and SCR 22.03(6), actionable via SCR 20:8.4(f).

¶ 17. On March 12, 2008, the parties filed a stipulation with this court. The stipulation states that Attorney Zajac fully understands the misconduct allegations; fully understands the ramifications should this court impose the stipulated discipline; fully understands her right to contest the matter; and fully understands her right to consult with counsel and states that she has in fact consulted with counsel and is represented in this matter. Attorney Zajac states that her entry into the stipulation is made knowingly and voluntarily and represents her admission of the misconduct recited in the OLR's complaint and her assent to the level of discipline sought by the OLR director.

¶ 18. We approve the parties' stipulation and recommendation regarding discipline.

¶ 19. IT IS ORDERED that the license of Lilah J. Zajac to practice law in Wisconsin is suspended for a period of 60 days, effective May 23, 2008.

---

[9] SCR 22.03(2) states:

Upon commencing an investigation, the director shall notify the [attorney] of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The [attorney] shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the [attorney] to answer questions, furnish documents, and present any information deemed relevant to the investigation.

¶ 20.  IT IS FURTHER ORDERED that Lilah J. Zajac shall comply with the requirements of SCR 22.26 pertaining to activities following suspension.